Corby v. Corby.

---

## CORBY et al., Appellant, v. CORBY et al.

1. **Will, Construction of**; LIFE ESTATE. A devise and bequest by a testator to his wife of all his property of every kind, real, personal and mixed, immediately followed by a bequest to her of all his moneys, notes, bonds, bank stock, etc., to have and to hold during her natural

life construed, when taken in connection with subsequent clauses of the will which clearly show that he had not intended to convey her an absolute estate in fee, to confer upon the widow only a life estate in the realty. The words "to have and to hold during her natural life" are limitations upon the estate in the realty devised as well as upon that in the moneys, notes, bonds, etc., bequeathed.

2. —————— : PRECATORY TRUST. A precatory trust is not to be inferred from expressions of confidence or desire on the part of the testator contained in the will regarding the use to be made of the property devised or bequeathed, unless it fairly appears from the will that the testator contemplated and intended to create such trust, and especially no such trust will be implied when it clearly appears from the will that the testator intended to give the devisee full discretion in the use of the property.

3. Life Estate : TRUST. A condition annexed to a devise and bequest of a life estate to a wife, that the testator leaves it to her discretion after providing for her own wants and comforts to give to such of his relations such aid or assistance as she may of her own will think proper and just, *held* not to constitute an expression of desire or confidence from which a trust may be implied, and that under this will the widow holds the life estate absolutely and not subject to any trust whatever.

4. **Will, Construction of**: POWER OF DISPOSITION : RELIGIOUS USES, Subsequent clauses of the will declared that the balance of the testator s property would be given to advance the cause of religion and promote the cause of charity in such manner as the wife might think would be most conducive to the carrying out of the testator's wishes, and empowered the widow to lease or sell property for the benefit of the estate. *Held,* that these provisions confer upon the widow no such powers of disposition as to enlarge her life estate to a fee or to constitute her a trustee for the heirs at law, the objects of the religious and charitable uses contemplated by these provisions being alleged to be illegal.

5. —————— : —————— : —————— : —————— : TRUSTEE. A will conferring upon the testator's widow a life estate in all his property, then declaring that the widow will give all the balance of the estate to religious and charitable uses, and finally empowering the widow to lease or sell parts of the real estate for the benefit of the estate, does not vest in the widow the fee in the property, of which, the religious and charitable purposes failing by reason of their illegality, the widow will be held a trustee for the use of the heirs at law.

6. Trustee. In order to constitute a party a trustee it is necessary to vest in that party an estate to be held in trust.

7 Waste. The petition in this case held to be insufficient to charge the tenant for life with waste.

Corby v. Corby.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB, Judge.

AFFIRMED.

*Doniphan & Reed* and *A. H. Vories* for appellants.

(1) Those portions of the will in question which seek to enjoin a trust upon Mrs. Corby, by which parts of the testator's estate were to be disposed of to advance the cause of religion and promote the cause of charity, in such a manner as to meet the views of the testator secretly communicated at some time by said testator to Mrs. Corby, were void, because such parts were not reduced to writing and duly attested by the subscribing witnesses, as required by the statutes of this state. R. S., sec. 3962; 1 Jarman on Wills (5 Ed.) 409, 410 ; *Schmucker's Estate v. Reel,* 61 Mo. 598; *Phelps v. Robbins,* 40 Conn. 251. (2) The disposition of the testator under the provision in question is a mystery. The supplementary testament rests in parol, but parol testimony of such disposition cannot be admitted to supplement the writing. 1 Jarman on Wills (5 Ed.) star page 410, and cases cited; *Tucker et al. v. The Seaman's Aid Society,* 7 Met. 188; *Bradley v. Bradley,* 24 Mo. 312 ; *Gregory et al. v. Cowgill et al.,* 19 Mo. 415 ; 48 Mo. 292 ; 19 Mo. 416 ; 14 Cal. 110 ; 6 Conn. 274. (3) The provision in question is void for uncertainty. In every will creating legacies or trusts there should be such *certainty* as will enable the court to carry them out. Where such uncertainty exists that the court cannot see what object the testator had in view, or for what he intended to provide, then the legacy or trust must fail. Bequests for purposes of benevolence and general liberality, such as the trustee shall approve or direct, cannot be supported either as *general trusts* or for *charitable uses. Schmucker's Estate v. Reel,* 61 Mo. 592; 2 Perry on Trusts (3 Ed.) sec. 729 ; 1 Perry on Trusts (3 Ed.) sec. 253 ; 9 Vesey, 399; 10 Ves. 521;

*Wheeler v. Smith*, 9 How. 79–80; *Gilbert v. Chapman*, 19 Conn. 347; *White v. Fiske*, 21 Conn. 257; 22 Conn. 55; 4 Am. L. Reg. (old series) 526; 2 Story Eq., secs. 979 *a*, 979 *b*.; 1156–1183; 1 Jarman on Wills (5 Ed.) star page 383, sub-div. 5; *Wilderman v. Mayor and City Council of Baltimore*, 8 Md. 551; 4 Harr. and Johns. 446. (4) The object and purpose of the testator in employing such vague and indefinite expressions as "to advance the cause of religion and to promote the cause of charity" was to evade the inhibitions of section thirteen of article one of the constitution of 1865. This the petition concedes and the provision in question is, therefore, void. *Schmucker·v. Reel*, 61 Mo. 592; *Kenrick v. Cole*, 61 Mo. 572. (5) This provision, then, being pronounced *void* by the constitution of 1865, and the estate of the heirs not having been divested by it the fact that the constitution of 1875 gave no place to this prohibition, can not have the effect of making valid, what was before **void**, so as to *divest* the estate of the heirs in this property. *McCarthy v. Hoffman*, 23 Pa. St. 508–509; *Alter's Appeal*, 67 Pa. St. 344–345; *Greenough v. Greenough*, 11 Pa. St. 489; *Hilliard v. Miller*, 10 Pa. St. 338; *Snyder v. Bull*, 17 Pa. St. 58; *State to use of Trustees M. E. Ch. v. Warren et al.*, 28 Md. 355, top page; Const. Mo., 1865, art. 1, sec. 28; Const. Mo., 1875, art. 2, sec. 15. (6) Nor is this a case where the doctrine of *cypres* applies. It applies only where the object is known and certain, but fails entirely, or ceases to exist, or is impossible of execution for some reason or objection encountered in its execution and outside of the will. Then the court will designate some other cognate charitable use to which the bequest can be applied. *Academy, etc., v. Clemans*, 50 Mo. 171; 2 Perry on Trusts, 727, 729; *Jackson v. Phillips*, 14 Allen 539. (7) Mrs. Corby only took a life estate in the property. *Hazel v. Hagan*, 47 Mo. 281; *Norcum v. D'Oench et al.*, 17 Mo. 99; *Ruby et al. v. Barnett*, 12 Mo. 3; *Green et al. v. Sutton et al.*, 50 Mo. 192; *Bryant, Adm'r, v. Christian, Adm'r*, 58 Mo. 98.

*H. L. Warren* and *Alex. Davis* for appellants.

(1)   It was the manifest intention of the testator to impose or create a trust in order "to advance the cause of religion and promote the cause of charity."   The devise was impressed with the character of a trust for the purposes named and the fact that the objects intended to be benefited are not designated with certainty and clearness does not destroy its character · as such.   *Schmucker's Estate v. Reel*, 61 Mo. 592 ;  *Williams v. Williams*, 1 Simon (N. S.) 358 ; 2 Roper on Legacies, by White, ch. 21, sec. 6, *et seq.;*  Lewin on Trusts, ch. 5, p. 77, *et seq.;* 2 Story Eq. Jur. (12 Ed.)· sec. 1068 *b*, *et seq.* ;  *Gordon v. Green*, 10 Ga. 354 ;  *Norman v. Burnett*, 25 Miss. 183 ;  2 Fonbl. Ch. sec. 4 ;  Hill on Trustees, 101 ;  Wigram on Wills, 33 ;  2 Redfield on Wills (2 .Ed.) 410 ;  Jarman on Wills, 336 ;  2 Pomeroy Eq. Jur. p. 571, sec. 1009, *et seq. ;* 2 Sugden on Powers (top p.) 158, sec. 34 ; *Erickson v. Willard*, 1 N. H. 217 ;  *Collins v. Carlisle*, 7 B. Monroe, 14 ;  *Bull v. Bull*, 8 Conn.  47 ;  *Bernard v. Minshull*, Johnson (Eng. Ch.) 276.   It is apparent that the testator appreciated, practically, the distinction between powers, which are never imperative, and trusts, which are always obligatory.   2 Sug. on Powers (top p.) 158, sec. 34 ; 2 Story Eq. Jur., sec 1070, and notes ;  Hill on Trustees (2 Ed.) 72 ;  1 Williams on Executors, 88 ;  *Brown v. Higgs*, 8 Vesey,  708 ;  *Burrow v. Philcox*, 5 Myl. and Cra.  73 ;  *Pushman v. Filliter*, 3 Vesey, 7 ;  *Morice v. Bishop of Durham*, 10 Vesey,  536.

(2)   The trust intended is void and the property descends to the testator's heirs.   *Schmucker v. Reel*, 61 Mo. 597 ; *Morice v. Bishop, etc.*, 9 Ves. 399 ;  *Mayor v. Wood*, 3 Hare 131 ;  *Chamberlain v. Sterns*, 111 Mass. 276 ; *Ruth v. Uberbrunner*, 40 Wis. 254 ;  *Nicols v. Allen*, 130 Mass. 211 ; *Olliffe v. Wells*, 130 Mass. 221 ;  *Briggs v. Penny*, 3 DeGex and Sm. 525 ;  3 Mac. and G. 546.   (3)   Neither the statute of 43 Elizabeth, nor the doctrine of *cy*

*pres* is applicable. *Chambers v. St. Louis*, 29 Mo. 549 ; *State v. Prewett*, 26 Mo. 165 ; *Academy v. Clemens*, 50 Mo. 157 ; *Schmidt v. Hess*, 60 Mo. 595 ; *First Bap. Church v. Robberson*, 71 Mo. 333.

*Thomas Thoroughman* for appellants.

(1)  The petition admits that the devisee, Amanda Corby, is entitled to a provision out of the estate for her wants and comforts during her natural life ;. beyond this she holds the property as trustee and the heirs at law are the real owners. "No particular form of words is necessary to create a trust. It will be sufficient if the intention be manifest that the donee shall not have the sole, beneficial interest in the property." *Gordon v. Green*, 10 Ga. 354; *Norman v. Bennet*, 25 Miss. 183. Any language in writing clearly expressive of a trust intended by a party, although in the form of a desire or request or recommendation, creates a trust. 2 Story's Eq. secs. 972, 1068 ; Hill on Trustees, 101 ; Wigram on Wills, 33 ; *Schmucker v. Reel*, 61 Mo. 593 ; *First Bap. Church v. Robberson*, 71 Mo. 326: *Briggs v. Penny*, 3 DeGex and Sm. 525 ; *Morice v. Bishop*, 9 Ves. 399. (2)  It is plain that the trusts created by the will are invalid. Nothing is better settled than that the special wishes and directions of a testator, whether oral or written, which are not embodied in his will, are inadmissible in evidence and form no part of the will. *Schmucker v. Reel, supra ; Briggs v. Penny, supra ; Morice v. Bishop of Durham*, 9 Ves. 399 ; *Bridges v. Pleasants*, 4 Seldon Eq. 26 ; *White v. Fisk*, 22 Conn. 31. (3)  The statute of 43 Elizabeth, chapter four, furnishes no assistance and it is of no importance whether it be recognized as in force in this state or not. That statute neither created nor inhibited charities. It only provided for the enforcement of certain *valid* charitable gifts. *Ould v. Washington Hospital*, 5 Otto 303 ; *Vidal v. Philadelphia*, 2 How. 128 ; *Fontaine v. Ravenel*, 16 How. 379 ; *Schmidt v. Hess*, 60 Mo. 595 ; 2 Story's Eq. Jur., sec. 1187. Nor

can the doctrine of *cypres* or *parens patrie* be invoked. *Fontaine v. Ravenel, supra*; *White v. Fisk*, 22 Conn. 53; *Andrew v. N. Y. Bible Society*, 4 Sandf. 56; *Williams v. Williams*, 17 How. 382. (4) The clause in regard to aid and assistance to relatives creates no valid power and imposes no valid trust. 2 Sugden on Vendors (3 Am. Ed.) sec. 145; Story's Eq. Jur., sec. 1070; *Pushman v. Filliter*, 3 Ves. 7; *Brown v. Higgs*, 8 Ves. 569. Powers are never imperative; they leave the act to be done at the will of the party to whom they are given. Trusts are always imperative and are obligatory on the conscience of the party intrusted. *Brown v. Higgs*, 5 Ves. 708; *Barrow v. Philcox*, 5 Myln. and Cra. 73; Hill on Trustees (2 Ed.) 72; 1 Williams on Executors, 88. (5) Mrs. Corby has no valid power of conveyance under the last clause of the will.

*Jeff. Chandler* for appellants.

(1) All of the will, except that which provides for the payment of the testator's debts and for the wants and comforts of Mrs. Corby, is void for uncertainty. The first uncertain provision in the will relates to the relatives of the testator. It contemplates and requires that Mrs. Corby shall give them such portions of the estate as her sense of justice may require her to give and such as the testator had expressed to her a desire that she give his relatives. It is uncertain who of his relatives were in his mind and what shares of his estate they were to receive. Parol evidence cannot be introduced to make the will in that respect more certain. 1 Greenl. Evid., sec. 289. (2) The uncertainty in amount, which is by the will, to go to some relatives of John Corby, renders the amount that will be left, the balance to be devoted to charity and religion uncertain, because that balance cannot be ascertained until the amount to be given to the relatives is first known and deducted. 2 Perry on Trusts, sec. 714; 1 Jarman on Wills. (Ed. 1861) 195, 196.

(3)   Under the laws of Missouri a court of equity cannot act as a board of distribution of property to charitable purposes or purposes claimed to be charitable.   Const., art. 4, sec. 43 ; 2 Perry on Trusts, secs. 707, 708 ; *Atty. Gen. v. Heelis*, 2 S. and S. 77 ; *Holland v. Peck*, 2 Ired. 225 ; *Grimes v. Harmon*, 35 Ind. 198.   (4)   Mr. Corby does not indicate in any degree whether he used the word charity in its legal sense.   "Charity and charitable use" have somewhat a technical meaning in the law.   2 Perry on Trusts, 697.   Before the will can operate to take the property away from the heirs at law and suspend the laws of descent and distribution it must affirmatively appear from the *will itself* that the words charity and religion were used in a sense which will constitute a public charity.   This is impossible so far as religion is concerned as there is no *public religion* in this country, nor can the courts *judiciously define religion*.   (5)   Where property is given to charity and religion and such gift is upheld, the power is left with the trustee to select the charity or the religion to which the property shall go. In that case if the trustee expressed a willingness to carry out the trust and actually proceeded to designate the charity and the religious objects of the trust, some courts have held that such designation will be protected by the court.   2 Perry on Trusts, sec. 720 ; *White v. Fisk*, 22 Conn. 31.   In this case the property is not given by the will to charity and religion generally, but to charity and religion as *controlled by the wishes of Mr. Corby, which are unexpressed in the will itself*.   So that the *particular charity*, which *rests only in the unexpressed wishes of Mr. Corby*, is not indicated in any manner whatever.   In this case the petition charges that Mrs. Corby refuses to designate the purposes of this trust, but claims the entire property as her own, which allegation is admitted by the demurrer in this case.   This will does not provide for a successor to Mrs. Corby, and if her discretion is to be the rule of distribution of this property, her failure to declare the objects of the trust and her

Corby v. Corby.

death extinguishes it. 2 Perry on Trusts, sec. 721; *Fontaine v. Ravenel*, 17 Howard 382.

*Silas Woodson*, *G. G. Vest* and *B. R. Vineyard* for respondents.

(1) If the plaintiffs are right, then Mrs. Corby, "my dear wife," and "my dearly beloved wife," as she is called by her dead husband, will take a pittance of not exceeding five thousand dollars a year from the estate during her life, and at her death the estate remaining will be divided amongst the heirs. (2) The expression in the will, "to have and to hold the same to her own use and benefit during her natural life subject to the following conditions," refers only to that species of property coming within the description mentioned in the second provision of the will above quoted, and in connection with which the language is used. 129 Mass. 76. (3) There can be no reasonable doubt, even if the above construction is not the correct one, that, under the second clause of the first condition of the will, Mrs. Corby takes a life estate with power of disposition among the relations of her husband's worldly effects "in accordance with her sense of justice," and "as she may think fit and proper." *Boyer v. Allen*, 76 Mo. 500; *McCormick v. Grogan*, L. R. 4 H. L. 82; *Pennock's Estate*, 20 Pa. St. 279; *Briggs v. Penny*, 3 M. and G. 554; *Williams v. Williams*, 1 Sim. (N. S.) 367; *Howard v. Canesi*, 109 U. S. 733; *Davis v. Madly*, 134 Mass. 588; *Foose v. Whitmore*, 82 N. Y. 407; *Reid v. Atkison*, 5 Irish Rep. (Eq. Series) 373; *Wells v. Doane*, 3 Gray 201; *Rhett v. Mason*, 18 Grat. 541; *Stead v. Mellor*, L. R. 5th Ch. Div. 225; *Creagh v. Murphy*, 7 Irish Reps. (Eq.) 182; *Cole v. Hawes* (L. R.) 4 Ch. Div. 238; *Wells v. Hawes*, 122 Mass. 97; *The Second, etc., v. Disbrow*, 52 Pa. St. 219; *Spooner v. Lovejoy*, 108 Mass. 529; *Ellis v. Ellis*, 15 Ala. 296. The intention of a testator is to be ascertained from *all* the will, and the latter part of a clause is not to bear the rela-

Corby v. Corby.

tion of a codicil annulling the part preceding, but if possible that construction must be adopted which will harmonize the whole. *Webb v. Woods*, 2 Sim. (N. S.) 267; 2 Pomeroy's Eq. Jur., sec. 1016; *Hess v. Singler*, 114 Mass. 59; *Stead v. Mellor* (L. R.) 5 Ch. Div. 225; *Pruden v. Pruden*, 14 Ohio St. 251. In a will the intent governs the words, but in a deed the words govern the intent. *Edwards v. Bibb*, 43 Ala. 666; 10 Bac. Abrid. 535. (4) The "wishes" of the testator not being declared in writing are not susceptible of proof and cannot control the devisee. 22 Mo. 522; 3 Wash. R. P. 452; *Wells v. Doane*, 3 Gray 201; *Mann v. Mann*, 1 John. Ch. 234; *Bradley v. Bradley*, 24 Mo. 315; *Lee v. Shivers*, 15 Rep. 6. If the devise to Mrs. Corby is made upon conditions, they are conditions subsequent, and if they fail because illegal, or impossible, or void, then the devise becomes absolute. 4 Kent Com. 130; 2 Williams Exec'r, 907; 2 Redf. on Wills, 285. (5) If property be given to one by will subject to a certain charge less than the whole value, the donee will take the remainder beneficially. 3 Redf. on Wills, 511; *Rogers v. Rogers*, 3 P. Williams, 193; *King v. Dennison*, 1 Ves. and B. 272; *Wood v. Cox*, 2 M. and C. 684; *Cook v. Hutchison*, 1 Keene 42. When an estate is devised upon successive trusts, some lawful and some unlawful, the lawful will be upheld. *DeKay v. Irving*, 5 Denio 646; *Manice v. Manice*, 4 Hand. (N. Y.) 363; *Harrison v. Harrison*, 36 N. Y. 547. (6) Under this will no time is limited within which Mrs. Corby may appoint said estate to the relatives of said testator. She has, therefore, her whole life in which to make said appointment. *Finley v. King*, 3 Pet. 376; *Wead v. Gray*, 78 Mo. 65; *Ingraham v. Meade*, 3 Wall. Jr. 32; *Phett v. Mason*, 18 Gratt. 541. If the donee of a power or trustee, is to select from the donor's relations those to whom he is to give the property, in the execution of the power, he may select from the whole circle of relations, whether near or distant, and he may exclude some altogether. 1 Perry on Trusts, sec. 256; *Harper v.*

*Phelps*, 21 Conn. 269 ; *Graeff v. DeTurk*, 44 Pa. St. 532 ; *Macey v. Shurmer*, 1 Atk. 389 ; *Ward v. Morgan*, 5 Cold. (Tenn.) 407 ; *Liefe v. Saltinstone*, 1 Mod. 189 ; 2 Sugden on Powers, top page 222. (7) The position that Mrs. Corby cannot under the will convey an estate in fee simple, for the reason that she has only a life estate, is not well taken. *Boyer v. Allen*, 76 Mo. 500 ; *Owen v. Ellis*, 64 Mo. 88 ; *Campbell v. Johnson*, 65 Mo. 439. (8) The mode in which Mrs. Corby may execute her power of apportionment among the testator's relatives not being specified she may execute it by either deed or will. *Friend v. Oliver*, 27 Ala. 532 ; *Christy v. Pulliam*, 17 Ill. 59 ; 2 Hilliard Real Prop. 837. (9) If our construction of the second clause of the first section of the will be correct, it disposes of plaintiffs' action, for until the death of Mrs. Corby it cannot be known whether there is any property upon which the remaining portions of the will can take effect. She has power to give to her husbands's relatives, if her "discretion and sense of justice" so dictate, the whole of the estate, and if so, it becomes immaterial what construction be given to the clause in regard to religion and charity. (10) If the will, however, created a trust relating to charity and religion, it is a valid trust and will be enforced. *Hesketh v. Murphy*, 36 N. J. Eq. 309 ; *Beckwith v. St. Phillip's Church*, 15 Cent. Law. Jour. 455 ; 2 Story's Eq. Jur., sec. 1165 ; 2 Perry on Trusts, 709 ; *Goode v. McPherson*, 51 Mo. 127, affirming the doctrine of *cypres*, decided in 50 Mo. 171 ; *Pickeriny v. Shotwell*, 10 Pa. St. 23 ; *Vidal v. Girard*, 2 How. (U. S.) 196.

JOHN C. GAGE, Special Judge.—The plaintiffs are a part of the heirs at law and legal representatives of John Corby, deceased. The defendant, Amanda Corby, is the widow of said John Corby, and the other defendants are all his other heirs at law. The defendants demurred to the petition of plaintiffs in the court below, and their demurrer was sustained, the court holding that the peti-

tion stated no cause of action. The petition states that John Corby died May 9, 1870, seized and possessed of a large amount of real and personal property, which is fully described; that the plaintiffs and defendants are his heirs at law and representatives, and that said Amanda is his widow.

The petition then proceeds as follows: "Plaintiffs further state that on, to-wit: the —— day of ——, 1870, there was duly admitted to probate, and probated, as the last will and testament of said John Corby, deceased, an instrument in writing, which was and is in words and figures, as follows, to-wit: 'In the name of God, amen: I, John Corby, of the city of St. Joseph, county of Buchanan, and the state of Missouri, being of sound mind and clear memory, and being fully aware of the uncertainty of life, and the certainty of death, and being desirous of disposing of all my wordly goods and effects in such a manner as I believe to be just and equitable, do declare the following to be my last will and testament: I do will and bequeath to my dearly beloved wife, Amanda Corby, all my property of every kind that I am possessed of, both real, personal, and mixed, including all my lands, lots, tenements, improvements, hereditaments, wherever situated. Also, I do hereby will and bequeath to my said wife, Amanda Corby, all my moneys, notes, bonds, bank stock, insurance stocks, or any other evidences of debt, and of money or property of every kind or character whatever, which I own or have any claim to, to have and to hold the same to her own use and benefit during her natural life, subject to the following conditions: *First*, that she will pay all of my debts. *Secondly*, that after providing for her own wants and comforts, I leave to the discretion of my dear wife to give to such of my relations such aid or assistance as my dear wife may, of her own will, think proper and just, hereby declaring that my relatives have no claim of any kind upon me, or upon any of my property; and anything that they may receive from my said

wife, out of my worldly effects, shall be in accordance with her sense of justice, and in accordance with my wishes, the nature of which she has been advised of by me during my life. *Secondly*, that the balance of my said property will be given to advance the cause of religion and promote the cause of charity, in such manner as my dearly beloved wife may think will be most conducive to the carrying out of my wishes. *Thirdly*, for the purpose of enabling my dearly beloved wife to more effectually carry out my wishes in reference to the disposition of my property as aforesaid, she is hereby authorized and empowered to lease, sell, or convey any of my said property which she may think will be beneficial to said property, by leasing or selling the same.' Which said will was duly recorded in said probate court, and now remains on file therein, and letters-testamentary duly issued out of said probate court to the said Amanda Corby, as executrix thereof, who now acts as such executrix.

"Plaintiffs state, that in and by the terms of said will, said devisor devised and bequeathed to said defendant, Amanda Corby, all of his property, real, personal and mixed, including said property hereinbefore mentioned, to hold the same during her natural life, as a trustee, and in trust, for the following purposes, to-wit:

"1.   Out of said property to pay all of said testator's just debts, and for the payment of which his said estate and property should be liable.

"2.   To provide for her own reasonable and proper wants and comforts during her natural life, out of the income, rents and profits of said estate and property.

"3.   Thereafter to pay, assign and convey to certain relatives of said deceased, certain parts and proportions of said property hereinbefore mentioned, in accordance with the wishes and directions of said testator, which were communicated and given to her by

said testator in his lifetime, and which were not ex-
pressed, contained or embodied in said will; and the
nature of which directions and wishes are to plaintiffs
unknown.

"4. To give, assign and transfer the balance of
said property of said testator which might remain after
the execution of said foregoing trusts, to advance the
cause of religion and promote the cause of charity in
some manner which should accord with and carry out
certain wishes and directions in that regard, which were
made known and communicated to the said devisee in
the lifetime of said testator, and which were not em-
braced, contained or embodied in the said will, and the
precise nature of which are to plaintiffs unknown, but
plaintiffs are informed and believe, and so state the fact
to be, that said wishes and directions, so communicated
to her, provided and required that said balance of said
estate should be by her given and devoted to and for
the support, use and benefit of some religious sect, order
or denomination, to plaintiffs unknown, or for the sup-
port, use or benefit of some minister, public teacher, or
preacher of the gospel, as such, to plaintiffs unknown.

"And said devisee, in and by said will, was authorized
and empowered to lease, sell, or convey, any of said
property which might be necessary to enable her to ex-
ecute and perform the said trusts before mentioned,
and as might be beneficial to said property and estate,
and not otherwise.

"Plaintiffs state that under and by virtue of the
terms of said will, the said Amanda Corby has entered
upon, and taken possession of all the property of every
description of which said John Corby died seized and
possessed including said property, real and per-
sonal, hereinbefore mentioned; and she gives out in
speeches, and claims that, under and by virtue of the
terms and provisions of said will, she is the absolute
and beneficial owner of all of said property, real and
personal, and that plaintiffs have no interest therein, in

law or equity, and threatens to convey, encumber, and convert to her own use all of said property and the proceeds thereof, and plaintiffs state that she will so do unless restrained by this court.

"And plaintiffs say that said devisee refuses to render an account of the rents, issues and profits of said property and estate to plaintiffs, or either, or any of them. Plaintiffs further state, that they are advised by counsel, believe, and so state: First, that under and by virtue of said will, the devisee took and holds only a life estate in said property, for and during her natural life, and that the plaintiffs and said other heirs at law of said testator, John Corby, are the owners of the fee of said lands in remainder, upon the termination of said life estate, and of all of said personal property remaining after providing for the said reasonable and proper wants and comforts of said Amanda Corby, out of the income, rents and profits of the same, and of said lands, and that said Amanda Corby holds the said property as trustee for them, subject to and after the payment of the just debts of said John Corby, out of said property and estate.

"Plaintiffs are further advised by counsel, and so state, that so much and such parts of said will as required said Amanda Corby to pay, assign and convey to relations of said deceased, parts and proportions of said property in accordance with wishes and directions of said testator, communicated and given to her in his lifetime, and which are not expressed and contained in said will, are void and of no effect.

"Plaintiffs are further advised, that so much and such part of said will as requires Amanda Corby to give and transfer the balance of said property as should remain, after the execution of the said trusts therein mentioned, to advance the cause of religion and promote the cause of charity, as hereinbefore mentioned, are void and of no effect.

"Plaintiffs further state, that the annual rents, income and profits of said property and estate, before mentioned, are equal to thirty thousand dollars, and said Amanda Corby is in receipt and enjoyment of the same, and claims the right to receive, hold and appropriate the same to her own use. Plaintiffs state that the annual sum of five thousand dollars, for and during her natural life, of the said income, rents, and profits, is a sufficient sum and allowance to provide for the reasonable and proper wants and comforts of said Amanda Corby. And plaintiffs state that all of the just debts of said John Corby, for the payment of which his said estate and property was liable, have long since been fully paid and satisfied.

"Plaintiffs, therefore, pray that said defendant, Amanda Corby, be required to render an account of said property, real and personal, held and claimed by her, under and by virtue of said will, and of the annual rents, income and profits of the same, heretofore received and collected by her, and that an account be taken by and under the direction of this court of the same, and of the amount of said annual rents, income and profits heretofore accruing, and that out of the same there be assigned and allowed to said Amanda Corby, the annual allowance and sum of five thousand dollars, or such other amount as the court may find necessary to provide for the reasonable and proper wants and comforts of said Amanda Corby during her natural life, and that she be decreed to hold the said property and estate of said John Corby, deceased, as trustee thereof, during her natural life, and that she be restrained from assigning, transferring, or converting to her own use, any of said property, real or personal, or the income, rents, or profits thereof, in excess of said annual sum so allowed and assigned to her, and that plaintiffs, and said other heirs at law of said John Corby, deceased, be declared and decreed to be the owners, in their legal proportion as such heirs at law of the said property, subject to the

said life estate and trust vested in said Amanda Corby, by and under the said will. And for such other and further relief as may be equitable and proper."

It will be seen that the portion of the petition material in this controversy is that which construes or involves, in part, at least, a construction of the will. The demurrer admits all the facts stated, but not the construction claimed. If the effect of this will is to confer upon the plaintiffs the rights and interest in the estate of the testator they claim for themselves, or any of those rights or interests, and to place the widow in the position of a trustee for them, then the demurrer ought not to have been sustained, and the judgment must be reversed; but if the widow is not a trustee for the plaintiffs of any such interest, the judgment was right. To this extent, and no further, it will be necessary to construe the will.

The construction which the heirs themselves place upon the will, is the first subject to be considered. The court is called upon, from their petition, to spell out what is their interpretation of it, upon which they base their right of action, and this is a task of some difficulty, for the petition is liable to the same objection of inconsistency that is urged against the will. The petition charges that by his will the testator devised and bequeathed all his property to the widow to hold "during her natural life, as a trustee, and in trust for the following purposes, to-wit: First. Out of said property to pay all of said testator's just debts, etc. Second. To provide for her own reasonable and proper wants and comforts during her natural life, out of the income, rents and profits of said estate and property. Third. Thereafter to pay, assign and convey to certain relations of the said deceased, certain parts and proportions of said property, etc. Fourth. To give, assign and transfer the balance of said property of said testator, which might remain after the execution of said fore-

going trusts, to advance the cause of religion and promote the cause of charity," etc.

Again, the petition states: "Plaintiffs further state that they are advised by counsel, believe and so state: First. That under and by virtue of said will, the devisee took and holds only a life estate in said property for and during her natural life," etc. Beyond question, this petition charges that the will vests in the widow only a life estate, and also that under it she holds the remainder in trust. It cannot be that she holds a fee in trust, unless the will gives her a fee. The very term, *trust*, implies an estate in the trustee, at least, commensurate with the trust. A trust is a relation between two persons, by virtue of which one of them (the trustee) holds property for the benefit of the other (the *cestui que trust*). She may have a mere power to dispose of the fee without the fee; such power may be valid if executed to convey the fee, but this would not constitute her a trustee, or render her liable to be proceeded against as such. It is claimed by the plaintiffs, however, in one part of the petition, that she holds the life estate itself in trust, and the object of the suit is to make her account for the income, rents and profits of the estate. We might, perhaps, with propriety, for the purposes of this decision, confine ourselves to the latter question, whether the life estate is, or is not held in trust, but as the defendants dispute this construction, we shall consider first what estate the widow does hold under this will.

The clause of the will, devising and bequeathing her interest in the property to her, is as follows: "I do will and bequeath to my dearly beloved wife, Amanda Corby, all my property of every kind that I am possessed of, both real, personal, and mixed, including all my lands, lots, tenements, improvements, hereditaments, wherever situated. Also, I do hereby will and bequeath to my said wife, Amanda Corby, all my moneys, notes, bonds, bank stock, insurance stocks, and any other evidences of debt, and of money or property of every kind or char-

.acter whatever, which I own or have any claim to, to have and to hold the same to her own use and benefit during her natural life, subject to the following conditions: First. That she will pay all my debts. Secondly. That after providing for her own wants and comforts, I leave to the discretion of my dear wife to give to such of my relations such aid or assistance as my dear wife may, of her own will, think proper and just; hereby declaring that my relatives have no claim of any kind upon me, or upon any of my property, and anything that they may receive from my said wife out of my wordly effects, shall be in accordance with her sense of justice, and in accordance with my wishes, the nature of which she has been advised of by me during my life."

It is contended that the limitation, to hold during her natural life, applies not only to the bequest of moneys, stocks, etc., with which it is immediately connected, but to the devise of real estate as well, which precedes it; that the expression "subject to the following conditions, first, that she will pay all my debts," etc., means *in trust for the following purposes :* First, that she will pay all the testator's debts; second, that she will use any such amount thereof as may be reasonable to provide for her own wants and comforts, and after so providing for herself, will give and convey certain portions of his property to certain of his relations, according to his directions and wishes, which he has communicated to her.

The second clause of the will is as follows: "Secondly. That the balance of my said property will be given to advance the cause of religion, and promote the cause of charity in such manner as my dearly beloved wife may think will be most conducive to the carrying out of my wishes." The construction which is given to this clause by the petition is, that it constitutes an additional use for the trust established by the first clause. By "the balance of my said property" is meant, it is claimed, all the residue of personal property and income

that may not be expended by the widow in her lifetime in satisfying the preceding trusts and the fee in the real property. It is further stated that the real meaning and intent of this is that this "balance" of property should be given by the widow to and for the use and benefit of some religious sect, order or denomination, or for the support, use or benefit of some minister, public teacher, or preacher of the gospel as such.

The third clause of the will merely authorizes the widow to dispose of the estate by sale or lease, in certain cases, and for certain purposes, and is only material as it may throw light upon or limit the meaning of the preceding clauses. It is said that this will was written by the testator himself. It is evidently the work of an unpracticed hand, and of a mind untrained to habits of precise and consecutive thought, or weakened by age or disease. It contains an abundance of legal terms and phrases, but the ideas expressed are indistinct and confused, and there is hardly a sentence in it that is not inconsistent with some other provision. In construing such a writing as this, absolute reliance cannot be placed upon any particular part of it, but the whole will must be examined with unusual care to determine what was the general intent and meaning of the testator. He first says: "I do will and bequeath to my dearly beloved wife, Amanda Corby, all my property of every kind that I am possessed of, both real, personal and mixed, including all my lands, lots, tenements, improvements, hereditaments, wherever situated." This is an absolute gift of all his property, real and personal. In the next sentence he gives her a portion of the same property for life, upon conditions as follows: "Also, I do hereby will and bequeath to my said wife, Amanda Corby, all my moneys, notes, bonds, bank stock, insurance stocks, or any other evidences of debt, and of money or property of every kind or character whatever, which I own or have any claim to, to have and to hold the same to her own use and benefit during her natural life, subject to the follow-

ing conditions." If this were the whole will, or there were no other references in it to any further disposition of the property, it would be very doubtful what effect, if any, should be given to the words "to have and to hold the same to her own use and benefit during her natural life," and especially whether they limited in any manner the gift of the real estate.

But there are still other inconsistencies contained in the succeeding paragraphs. The second clause is as follows: Secondly. "That the balance of my said property will be given to advance the cause of religion, and promote the cause of charity in such manner as my dearly beloved wife may think will be most conducive to the carrying out of my wishes." Whether by "the balance of my said property" he meant that which he had not already disposed of, that is, the remainder after the life estate, or what might remain unexpended by his wife after the payment of his debts, her support and maintenance, and the aid and assistance she might render to his relations, the remainder or surplus of the moneys, notes, stocks, bonds, etc., is certainly included in this balance. And this balance he now says will be given in such manner as she may think will be most conducive to the carrying out of his wishes, will be given then necessarily by her. He had evidently forgotten that her interest in this property had already been limited to her life, and that at her death she would have no power to give this part of the estate.

But the third clause is still more inconsistent with everything that precedes it. It is as follows: "Thirdly. For the purpose of enabling my dearly beloved wife to more effectually carry out my wishes in reference to the disposition of my property as aforesaid, she is hereby authorized and empowered to lease, sell or convey any of my said property which she may think will be beneficial to said property by leasing or selling the same." These terms leasing, conveying, selling, manifestly refer to the real estate. If by the first clause any property whatever

was given to the wife absolutely it was the real estate, and now by this clause he gives her a very limited power of disposition of it.  She can sell, convey or lease such of it as she may think it will be a benefit to the estate to lease or sell, and not at all for her own use or benefit. If he had ever intended to give her an estate in fee he had now forgotten it.  This is the last clause of the will and it is impossible to believe that when he signed it he thought that he had given his wife an absolute fee simple in his real estate.  Turning back to the first clause we find that a very slight change in the punctuation would make the limitation to a life estate apply to the entire gift of lands, chattels and choses in action, and this we think is the most reasonable solution of the question.

Assuming, then, for the present, that the estate of the widow is a life interest in all the property, as claimed by the plaintiffs, and not an absolute estate, as claimed by defendants, is that estate subject to any trust whatever? The only question is whether by and under the will she is made a trustee.  The estate was subject to the payment of the testator's debts, as in every estate, but the heir or devisee is not thereby constituted a trustee.  The will declares that she is to hold the estate for life, subject to the following conditions:  "First. That she will pay all my debts."  This is, in the proper sense, a condition, a condition subsequent, and, although a condition may in some cases import a trust, this is not a condition of that kind.  The second so-called condition is in no proper sense a condition; neither does it evince or imply a trust.  The language is:  "That after providing for her own wants and comforts I leave to the discretion of my dear wife to give to such of my relations such aid or assistance as my dear wife may of her own will think proper and just."  Here is the widest discretion; she may give nothing; she may give everything, she has entire freedom in selecting the objects of her bounty.  If language can do it the testator here disavows any such

intention or meaning as that imparted to him by the plaintiffs. It is claimed, however, that we have a case of an expression of a desire or confidence by the testator that the devisee should aid and assist his relatives; that his wishes in that respect had been made known to his wife, and that this is sufficient to constitute a precatory trust. This is not so; the testator had no such desire or confidence. "I leave to the discretion of my dear wife to give to such of my relatives such aid or assistance as my dear wife may of her own will think proper and just." It is her discretion, her will, her sense of justice that is to determine what aid or assistance shall be given and to whom; and in exercising this discretion she is assured that she may do it uninfluenced by any claim of right on the part of the relatives, and that whatever she does in the exercise of her discretion must be taken by the relatives as the result of the testator's wishes. If, however, the language were stronger than it is and did it express both a definite wish and confidence on the part of the testator, it would not constitute the wife a trustee, if coupled with this plain and unmistakable intention that the aid or assistance was to depend on her discretion.

There are undoubtedly many cases in the books that have gone far in holding that expressions of desire or confidence in a will create trusts, but the tendency of modern decisions is to have regard to the intention of the testator as gathered from the whole will in determining whether or not such expressions shall create a trust. The latest case upon this subject is *In re Adams and The Kinsington Vestry*, Law Rep., Ch. D., vol. 26, 394. The will in this case was as follows: "I give, devise and bequeath all my real and personal estate and effects whatever and wheresoever unto and to the absolute use of my dear wife, *Harriett Smith*, her heirs, executors, administrators and assigns, in full confidence that she will do what is right as to the disposal thereof between my children, either in her lifetime, or by will after her

decease." Cotton, L. J., in his opinion said: "I have no hesitation in saying myself, that I think some of the older authorities went a great deal too far in holding that some particular words appearing in a will were sufficient to create a trust. Undoubtedly, confidence, if the rest of the context shows that a trust is intended, may make a trust, but what we have to look at is the whole of the will which we have to construe, and if the confidence is that she will do what is right as regards the disposal of the property, I cannot say that that is, on a true construction of the will, a trust imposed upon her."

Lindley, L. J., in his opinion said: "It is very true that he (the testator) goes on to say (in terms which, having regard to the cases, he had better not have said) that he trusted her to do what was right as to the disposal of his property between his children. It is clear that every man trusts his wife to do what is right if he leaves all his property to her; but this testator has been unfortunate enough to say so, and we have to construe his will because it is contended that he says so in such a way as to turn his wife into a trustee for the children. I quite agree that some of the cases have gone very far and have imposed upon words a meaning beyond what they bear if looked at alone, apart from the authorities. I am glad to see that Lord Justice James had the courage to stem the tide, and I find in the last case I know of before the privy council, that they have taken the same view. It is the case of the *Mussoorie Bank v. Raynor*, in which a man gave his widow the whole of his real and personal property, feeling confident that she would act justly to their children, and divide the same whenever occasion required it of her. The words said there are not quite the same as here, but what the privy council said there was this: 'Passing to the merits of the case, their lordships are of opinion that the current of decisions now prevalent for many years in the court of chancery shows that the doctrine of precatory trusts is not to be extended. I am very glad to

see that the current is changed, and that beneficiaries are not to be made trustees unless intended to be so by the testator.' "

The case, *Reid v. Atkinson*, 5 Irish Reports, Equity, 373, referred to by both plaintiffs and defendants in their briefs, is very instructive upon several of the questions that arise in this case. In that case there was a gift of a life estate in terms, with an absolute power of disposition superadded. In that respect it differs from this as the power of disposition here is very limited. On this ground the conclusion was reached that the effect of the power of disposition enlarged the life estate to a fee. Here the want of such unlimited power prevents that result. In that case it is held that the presumption in such cases, when even the object of the confidence is ascertained is, that no trust is intended and that this presumption is still stronger when the object is not expressed in the will. The fact that the testator conceals the object of his desire is held almost conclusive that he intended no trust, but to rely on the discretion and fidelity of his devisee. These cases and the case referred to in the opinions of the judges and the entire current of modern authorities, too numerous for citation, have established the rule that trusts are not to be created for the purpose of carrying out the declared wishes or confidences of a testator, unless he himself by his will has manifested a clear intention of creating a trust. No such intention is manifested here, but the very opposite.

One more question remains to be considered before we pass from the consideration of this clause of the will. The wife is authorized to render aid and assistance. " I leave to my dear wife to give such aid or assistance," etc., is the expression. Is this aid or assistance to be given out of the body of the estate, the fee of the lands and the principal of the money, or out of the life estate and income already given to her? This question is important because if as we have already determined, only a life estate is given to the wife, and she is by this clause

authorized to give the remaining estate to such of the relations as she pleases, then a power of appointment is conferred upon her, which she may exercise at any time, and the heirs at law have no standing in court to maintain this suit. But it would be too great a stretch of construction to so hold. This clause seems intended by the testator as an explanation to his heirs rather than a testamentary clause. The testator in effect says to them: "I have given you nothing, I leave my wife to give you, if she sees fit; you deserve nothing from me and have no claim upon me; she knows the use I desire to have made of my estate; if she sees any of you in circumstances that to her sense of justice call upon her bounty and she gives you anything it will be just what I would do under like circumstances." This clause is rather in the nature of a caution and a warning to the heirs that they need not complain of the widow of injustice in giving or withholding. It is neither a gift nor a power. It adds nothing to the estate already given, which is only a life estate, but merely states that in giving to his wife that estate he has left her free to give out of it, or not, as she may see fit, to any of his relations.

We can find no ground whatever in the will for establishing a trust against the life estate of the widow. So far our decision is in entire harmony with the purpose and desire of the testator. He made his wife, loved, honored and trusted by him, the only object of his bounty whom he named in his will. To secure her comfort and happiness he placed in her hands the whole of his large estate. He declared that his relations should have no legal, as they had, in his opinion, no moral, claim upon her for any portion of it. It would be strange, indeed, if, in construing and enforcing this will, it should be held that under it these same relations were entitled to compel this widow to act as their stewardess and keeper of this great estate, to be responsible for it, preserve, manage and increase it for the poor recompense of a bare sustenance; to work for them in this important

capacity for her board and clothes, and to be subject constantly to be called to answer for what they may consider any extravagance in her expenditure and to be placed under the guardianship of a court at their beck or instance in regard to every item of her expenses. This was not the testator's wish as expressed in his will. If any intention whatever can be drawn from it, it is that for her comfort and support she should have, at least, the income of the estate for her own use and benefit. And we may say, further, that, if under the second clause it had been held that this life estate was by implication enlarged to a fee, the principles enunciated in the cases we have cited would apply equally to that clause, and under them we should be compelled to hold that the strong expression of confidence by the testator, which even took the form of a prediction that his wife would devote his fortune to the uses of charity and religion without any attempt to bind her to a trust, would still leave in her an absolute and unfettered estate. In fact it is not necessary to the judgment upon this case to decide ultimately the extent of her rights. It is probably true that the intention of the testator to make an absolute disposition of his property and to deprive his relations of any part of it under the will, will be defeated by a decision that it conveys only an estate for life, but it is not the decision that defeats his intent. If he intended to make a will and dispose of his property that intent will be of no avail; unless he actually accomplished it, the court will not do it for him; all that a court can do is to declare the effect of a will so far as there is a will; it cannot carry out an intent to make a will.

Nor, admitting that the plaintiffs are the remaindermen and the widow tenant for life, does the petition state a cause of action for waste of the estate. For all that appears she may be able to account fully for all the personal property, and as to the real estate no harm can come to the remaindermen from an attempt of the life tenant to sell his estate. In no possible view of the case

does the petition state a cause of action. Wherefore the judgment of the circuit court is affirmed. Sherwood, J. not sitting.

HENRY, C. J., Concurring.—I concur in the result, but differ from my associates as to the construction of the will. I think that Mrs. Corby has a life estate with a power of disposition limited only by her discretion and the purposes for which such disposition may be made.

NORTON AND RAY, JJ., Concurring.—Understanding the opinion in this case to hold that under the will of John Corby, Mrs. Amanda Corby only takes a life estate in the real and personal estate, with no power of disposition of the *corpus* or body of the estate, and that as to the remainder in fee said Corby died intestate and that as to the remainder, his heirs and legal representatives take under the law of descents and distributions, we concur in the conclusion reached and in affirming the judgment.